George F. Carpinello, Esq.
Adam R. Shaw, Esq.
BOIES, SCHILLER & FLEXNER LLP
30 South Pearl Street
Albany, New York 12207
(518) 434-0600

Charles Juntikka
CHARLES JUNTIKKA & ASSOCIATES LLP
1250 Broadway, 24th Floor
New York, NY 10001
(212) 315-3755

*Attorneys for Plaintiff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KIMBERLY BRUCE,<br><br>Debtor and Plaintiff on behalf of herself and all others similarly situated,<br><br>v.<br><br>CITIGROUP, INC.; CITIBANK, N.A., and CITIBANK (SOUTH DAKOTA), N.A.,<br><br>Defendants. | Adv. Proc. No. 14-08224 (RDD) |

**AMENDED CLASS ACTION ADVERSARY COMPLAINT**

1.  Plaintiff Kimberly Bruce, on behalf of herself and all others similarly situated, brings this Complaint, by and through her attorneys, for declaratory judgment, injunctive relief and damages arising out of the Defendants' systematic practice of violating the discharge

injunction under Section 524(a)(2) of the Bankruptcy Code, 11 U.S.C. Sections 101 *et seq*. by acting to collect discharged debts through its failure to update and correct credit information to credit reporting agencies to show that such debts are no longer due and owing and that they have been discharged in bankruptcy.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in U.S.C. § 157(b)(2)(A) and (O).

3. Venue is properly in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2), as Defendants resides in this District within the meaning of § 1391(c)(2), Plaintiff resides in this district, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

## PARTIES

1. Plaintiff Kimberly Bruce resides at 52 Anderson Road, Apartment 2, Katonah, Westchester County, New York.

2. Upon information and belief, Citigroup, Inc. is a banking association existing under the laws of the United States with a place of business in New York, New York and engages in continuous business within the State of New York.

3. Upon information and belief, Citibank, N.A. is a banking association existing under the laws of the United States with a place of business in New York, New York and engages in continuous business within the State of New York.

4. Upon information and belief, Citibank (South Dakota), N.A. is a banking association existing under the laws of the United States with a place of business in Sioux Falls,

South Dakota and engages in continuous business within the State of New York.

## BACKGROUND

5.  This Complaint alleges that Citigroup, Inc., Citibank, N.A., and Citibank (South Dakota), N.A. ("Defendants") have violated § 524(a)(2) of the Bankruptcy Code because they have willfully attempted to collect on discharged debts. Specifically, Defendants: (1) were aware of Plaintiff's discharge in bankruptcy and the discharge of the debt Plaintiff owed to Defendants; (2) they were aware that they were reporting on the status of Plaintiff's account incorrectly; (3) they had the ability to update or correct their reporting on the status of Plaintiff's account after Plaintiff received the bankruptcy discharge; and (4) Defendants willfully failed to update or correct Plaintiff's and other Class Members' credit reports because Defendants have adopted a policy of not updating credit information for debts that are discharged in bankruptcy for the purpose of collecting such discharged debt.

6.  Even after Plaintiff contacted Defendants in December 2013 demanding that Defendants correct her account, Defendants have not changed their policy and continue to refuse to update tradeline information they know is false and detrimental to the "fresh start" that debtors are entitled to receive from the Bankruptcy Code. This continued policy of refusing to update the bankruptcy status of discharged accounts constitutes willful acts to collect discharged debts.

7.  Defendants have a deliberate policy of refusing all debtor requests to update credit reports with regard to debts discharged in bankruptcy for accounts sold prior to the filing of the bankruptcy. This refusal policy applies to all accounts sold prior to the filing of bankruptcy.

8.  Upon information and belief, Defendants' refusal policy also applies to accounts that Defendants have not sold prior to filing of the bankruptcy.

3

9. Defendants' failure to update credit reports is not a matter of inadvertence; it is a willful policy of attempting to lay a trap for Plaintiff and other Class Members until the point that they need an accurate credit report, and they cannot obtain such a credit report without paying on a discharged debt.

10. By refusing to correct former debtors' credit information to reflect that their debts have been discharged in bankruptcy, Defendants enhances the value of the debt they sells to third parties because third parties will pay Defendants more for delinquent debts if the third party knows that Defendants will not update the debtors' credit reports to list the debt as discharged in bankruptcy. Furthermore, since Defendants and their debt purchasers understand that they are prohibited by the Bankruptcy Code from contacting the discharged debtors, they know that their sole method of debt collection is the coercive effect of the negative credit reporting that will pressure the discharged debtors to pay the debt and / or pressure the discharged debtors to contact Defendants or the debt purchasers who can then exert further pressure to pay the debt.

11. Defendants also maintain an interest in the discharged because they acts as agent for the third-party debt purchasers by collecting discharged debts paid by the discharged debtors directly to Defendants and then forwarding the payments to the debt purchasers.

**PLAINTIFF KIMBERLY BRUCE**

12. Plaintiff repeats and realleges the allegations in Paragraphs 1-11 as if fully set forth herein.

13. Plaintiff is among many thousands of persons in the United States who have filed bankruptcies pursuant to Chapter 7 of the U.S. Bankruptcy Code and who have been granted orders of discharge by a U.S. Bankruptcy Court. Under federal bankruptcy laws, such an order

4

fully and completely discharges all statutorily dischargeable debts incurred prior to the filing of bankruptcies, except for those that have been: (1) reaffirmed by the debtor in a reaffirmation agreement; or (2) successfully challenged as non-dischargeable by one of the creditors in a related adversary proceeding. Plaintiff and the Class Members are persons for whom the debts at issue herein have been discharged through bankruptcy.

14. On or about April 2007, Plaintiff incurred a debt with Defendants.

15. Sometime after June 2009, the debt became delinquent and in December 2009, Defendants under the name "ExxonMobil/CBNA Citibank Cd Unit" with the address of P.O. Box 6497, Sioux Falls, SD 57117 filed credit information with the credit reporting companies noting that the debt was delinquent.

16. Thereafter, ExxonMobil/CBNA Citibank Cd Unit reported the debt balance at $1124 and reported it as "charged off."

17. On January 24, 2013, Plaintiff commenced this case by filing a voluntary petition for relief under Chapter 7 of Title 11 of the U.S. Code.

18. On or about May 7, 2013, this Court entered an Order discharging debtor's debt including the debts to Defendants.

19. On May 9, 2013, this Court notified Defendants of the discharge of Plaintiff's debt to Defendants.

20. On or about September 2013, Plaintiff obtained her Equifax credit report, which showed the words "charged off" next to the discharged account at issue in the current status of the credit reports. The credit report showed no indication that the account had been "included in bankruptcy."

5

21. The account in question was not subject to a reaffirmation agreement with Defendants or an adversary proceeding brought by Defendants.

22. In December 2013, Plaintiff contacted Defendants through her attorney and advised Defendants that she had filed for bankruptcy and that the account listed under ExxonMobil CBNA Citibank Cd Unit was discharged in bankruptcy.

23. Plaintiff informed Defendants that the account was appearing on her Equifax credit report as a "charge off."

24. Plaintiff requested that Defendants remove the "charge off" from her credit report.

25. Defendants refused to remove the "charge off" from her credit report.

26. On March 13, 2014, over two months after Plaintiff requested that Defendants remove the "charge off" from her credit report, Plaintiff filed a motion to find Defendants in contempt of the discharge injunction. The Notice of Motion specifically demanded that Defendants remove the "charge off" from the Plaintiff's credit reports.

27. Upon information and belief, about two weeks later, on March 25, 2014, Defendants requested the credit reporting agencies to delete the "charge off" and tradeline referring to Plaintiff's account.

28. Upon information and belief, Defendants assigned Plaintiff's debt to Midland Funding LLC ("Midland") in June 2011.

29. Upon information and belief, this debt was assigned pursuant to a Forward Flow Agreement ("Agreement").

30. Under the Agreement, Defendants agreed to act as agent for Midland in the collection of such debt. As agent, Defendants agreed to forward to Midland all sums collected by Defendants on debts sold to Cach.

31. Separate and apart from the forwarding and retention of amounts collected by Defendants, Defendants have a direct financial interest in the collection of Plaintiff's discharged debt because third party purchasers are willing to pay more for Defendants' discharged debt portfolio because they know they can collect on discharged debts.

32. In addition, Defendants requires Midland to pay Defendants for information about the sold debts, including Plaintiff's debt, that Midland uses to help it collect the debts.

33. The Agreement specifically provides only that Defendants may report the sold debts as sold or transferred and does not provide for the debts to be reported as discharged in bankruptcy.

34. The Agreement also provides that Midland will not be responsible for correcting or updating information on any debts listed in the name of Defendants, even if such debts were sold to Midland, and Defendants will not be responsible for correcting or updating information on any debts listed in the name of Midland.

35. Further, upon information and belief, as a matter of practice, Midland refuses to correct or delete a tradeline, such as that for the subject debt, which, although discharged in bankruptcy, is in Defendants' rather than Midland's name.

36. Upon information and belief, the credit reporting agencies will not permit Midland to make any change in a tradeline listing Defendants as the creditor.

37. Further, Plaintiff's credit reports list the subject debt only in Defendants' name and not in the name of Midland. Midland is not listed anywhere on Plaintiff's credit reports.

38. Thus, Defendants are aware that only it could effect a change in Plaintiff's tradeline to correctly reflect that the debt has been discharged in bankruptcy. Defendants knows that they can delete or correct the tradeline because they have now done so for Plaintiff's

7

debt.

39. Defendants' refusal to correct the tradeline referring to this discharged debt had an adverse effect on Plaintiff because she was denied her fresh start provided by the bankruptcy discharge and she is aware that her ability to obtain credit, housing, students loans or employment is adversely affected by the erroneous credit information.

## THE CLASS INCLUDING THE PLAINTIFF

40. Plaintiff repeats and realleges the allegations in Paragraphs 1-39 as if fully set forth herein.

41. Defendants are creditors regularly engaged in the business of extending credit to Plaintiff and other members of the Class.

42. In the ordinary course of business, Defendants' debtors who are enduring financial hardship fall behind on their payments on Defendants' credit accounts. Prior to the filing of any personal bankruptcies, Defendants, their collection agencies or delinquent debt companies that purchase Defendants' debt, act to collect these past due debts by threatening in dunning letters to place a "charge off" or other similar "past due" notations on the debtors' credit reports. Said letters threaten to ruin the debtors' credit unless they pay the past due debt. Defendants, their debt collectors and delinquent debt companies that purchase Defendants' debt also act to collect these past due debts by promising in dunning letters to remove the "charge off" or other "past due" notations on the debtors' credit reports to show that the past due debts have been paid if the debts are paid.

43. In the ordinary course of business, Defendants issue reports to credit reporting agencies as to the current status of debts incurred by individuals whom Defendants have extended credit. They are also entities which regularly and, in the ordinary course of business,

furnishe information to one or more credit reporting agencies about their transactions and experiences with consumers.

### DEFENDANTS HAVE KNOWLEDGE OF THE DISCHARGE OF PLAINTIFF'S DEBT AND THAT OF OTHER CLASS MEMBERS

44. Defendants have knowledge of when their past due debts and delinquent accounts are discharged because they receive a discharge notice from the U.S. Bankruptcy Court. Defendants received such notice of the discharge of Plaintiff's debts to Defendants.

45. Since 2004, upon information and belief, Defendants have had knowledge of the fact that a very large number of discharged debtors have notified them of legal claims including lawsuits alleging that Defendants have a willful policy of not updating sold accounts and certain other accounts to remove the charge off or other negative information from their credit reports in violation of the discharge injunction.

46. Upon information and belief, Defendants were (1) aware of the knowledge alleged in the foregoing paragraphs and in the other paragraphs of this complaint; and (2) willfully decided to not update the credit reports of the Plaintiff and the other class members for the purpose of obtaining a monetary benefit for Defendants or Defendants' third party purchasers of delinquent debt.

### DEFENDANTS KNOWS THAT REPORTING ON PLAINTIFF'S DEBT AND THAT OF OTHER CLASS MEMBERS IS ERRONEOUS

47. Defendants know that credit reporting agencies continue to report Plaintiff's discharged debt and those of other Class Members as "charged off." Defendants are aware of this fact because they regularly report to the credit reporting agencies and have access to this data, and can learn at any time the status of a tradeline that reports Defendants as the creditor.

48. Defendants also knows that, without correction by Defendants, the tradeline will not be changed because it is not the practice of credit reporting agencies to make such changes if the debt has been transferred by the original creditor.

49. Further, upon information and belief, Defendants have specific knowledge that the information in the credit reports will not be changed unless they do so because they have agreements with the purchasers of delinquent debt that the purchasers of such debt will not change credit lines that list Defendants as the creditor.

50. In addition, Defendants have agreements that prohibit them from reporting on the tradelines they sell other than to report the tradeline as sold or transferred.

51. Defendants also continue to engage in regular transactions with debtors whose debt has been sold to third-party purchasers because Defendants forward to such purchasers payments they received on sold debts and charges those purchasers for information the purchasers need to collect on the debt.

52. Defendants knows that a significant amount of payments will be made to them, rather than the third-party purchasers, because the tradelines remain in Defendants' name and that the name of the third party debt purchasers generally does not even appear on the credit reports just as the debt purchaser "Midland" does not appear on the Plaintiff's credit reports in this case.

53. Upon information and belief, the credit reporting agencies will not permit third party debt purchasers to make any change in any tradelines for accounts listed by the original creditors. In this case, the original creditor on the tradeline is "ExxonMobil/CBNA Citibank Card Unit". Thus, Defendants have knowledge that the credit information that they have placed on Plaintiff's and other Class Members' credit reports is and continues to be inaccurate.

10

### DEFENDANTS HAVE THE ABILITY TO CORRECT THEIR REPORTING ON THE STATUS OF PLAINTIFF'S ACCOUNT AFTER THEY RECEIVE NOTICE OF A BANKRUPTCY DISCHARGE

54. Defendants have the ability to correct or delete the credit information that indicates that Plaintiff's subject debt is still "charged off." Banks and other lending institutions such as Defendants have the ability to delete or correct erroneous tradelines, even when those debts have been transferred to third parties.

55. Upon information and belief, Defendants sold Plaintiff's debt at issue here. Yet after Plaintiff moved to hold Defendants in contempt in Bankruptcy Court, Defendants deleted from credit reports the charge off and tradeline related to Plaintiff's debt.

56. In addition, many banks and other creditors routinely delete or correct tradelines to reflect discharges in bankruptcy, even when those debts have been transferred. Defendants know they have the ability to correct these tradelines but have continued to not update the credit reports and refused the requests of the Class Members who have asked them to do so.

### DEFENDANTS' CONDUCT IS WILLFUL

57. Despite the fact that Defendants have received notice of the discharge of Plaintiff's and each Class Member's debt to Defendants, Defendants have a deliberate policy of not notifying credit reporting agencies that debts formerly owing to Defendants are no longer "charged off" or currently still due and owing because they have been discharged in bankruptcy. As result of Defendants' policy of not updating the accounts at issue with the credit reporting agencies, debts that have been discharged in bankruptcy are listed on Class Members' credit reports as "past due" and/or "charged off." These notations clearly indicate to potential creditors, employers, or other third parties that a Class Member still owes a debt and that debt may be subject to collection. These notations adversely affect Plaintiff's and every Class

11

Member's ability to obtain credit or employment and have the inherent coercive effect of inducing Plaintiff and all other Class Members to make payment on the debt.

58.   Plaintiffs' counsel alone can identify and provide documentation for approximately 100 clients whose debt has been discharged in bankruptcy, but whose debts are still inaccurately reported as delinquent or "charged off" by Defendants.

59.   Defendants have willfully continued the policy of not updating the credit reports for members of the prospective class until the present day.

60.   On information and belief, other large credit card issuers update their sold accounts to reflect that the credit account was discharged in virtually every case.

61.   Many debtors whose debts have been discharged in bankruptcy have advised Defendants of their failure to update the information on their credit reports to show that their debts have been discharged to bankruptcy. These debtors have requested that Defendants remove the past due notations from their credit reports. Defendants have refused to do so.

62.   Defendants have a deliberate policy of refusing the debtors' requests to remove "charge offs" and other similar "past due" notations from Defendants' debts that were sold prior to the filing of the bankruptcy from the debtors' credit reports. As a result, the credit reports of these individuals and of all Class Members incorrectly show their indebtedness to Defendants to be collectible.

63.   Even in response to notices from Class Members that information contained in their credit reports was inaccurate, Defendants have refused to correct erroneous credit information. In fact, Defendants have advised former debtors that, unless they pay the discharged debt, the credit reports must reflect that the debt was "charged off" or similar language for seven (7) years. This policy of refusing all requests by discharged debtors who ask

12

that that Defendants remove charge offs from their credit reports independently establishes that Defendants are willfully acting to collect discharged debts by not updating credit reports.

64.     Upon information and belief, Defendants have also received requests from time to time from the credit reporting agencies that Defendants verify that the debt owed by Plaintiff and Class Members were discharged in bankruptcy to which Defendants have responded that the debts were still due and owing, despite Defendants' knowledge that such debts have in fact been discharged in bankruptcy.

65.     Defendants know that the existence of such inaccurate information in the Class Members' credit reports would damage the Class Members' credit ratings, including that of Plaintiff, and their ability to obtain new credit, a lease, a mortgage or employment, all of which may be essential to reestablishing their life after going through bankruptcy.

66.     Defendants have chosen not to advise the credit reporting agencies of the fact that Class Members' debts have been discharged because Defendants continue to receive a monetary benefit either directly or indirectly on discharged debts.  This policy has been applied to Plaintiff, even though Defendants know that only they can correct the erroneous credit information relating to Plaintiff.  This results from the fact that Class Members, including Plaintiff, in order to obtain favorable credit or credit at all, often feel it necessary to pay off the debt despite its discharge in order to remove the inaccurate information from their credit reports.

67.      This belief is intentionally reinforced by Defendants themselves when Class Members contact Defendants asking them to correct the erroneous credit information.  Thus, upon information and belief, when a Class Member needs to rent a car, obtain employment or rent an apartment, or other similar transactions, and they are advised by Defendants that Defendants will not remove the erroneous information unless they pay the debt, Class Members

13

often pay that debt despite the fact that it has been discharged in bankruptcy. Thus, Defendants know that they are obtaining repayment on debts that have been discharged in bankruptcy.

68. Class Members often believe that they must pay the debt in order to remove it from the credit reports because they are often advised prior to bankruptcy by Defendants and collection agencies that, if their debt is marked as charged off, it will dramatically affect their credit rating and will severely impact their ability to receive credit in the future.

69. The Plaintiff is in possession of collection letters mailed by Defendants to class members – prior to the bankruptcy filing – stating that "charge offs" will ruin their ability to obtain credit and conversely promising to remove the "charge off" if they pay the delinquent debt in full. Consequently, Defendants are fully aware that their deliberate failure to update a discharged debtor's discharged account coerces the debtor to pay said account.

70. Defendants have adopted a pattern and practice of failing and refusing to update credit information with regard to debts discharged in bankruptcy because they sell those debts and profits by the sale. Defendants know that if the credit information is not updated many Class Members will feel compelled to pay off the debt even though it is discharged in bankruptcy. The purchasers of Defendants' delinquent debt are aware of the foregoing facts. Thus, purchasers of Defendants' debt know, and are willing to pay more for the fact that, they will be able to collect portions of Defendants' sold debt despite the discharge of that debt in bankruptcy.

71. Defendants act as agent for the third-party purchasers to whom Defendants have sold the debts by forwarding to them payments Defendants receives from former debtors who feel compelled to pay off discharged debts as the only means of correcting the erroneous credit information that Defendants refuse to correct.

72. Defendants get paid for providing information on the sold debt that the purchasers use to collect the debt.

73. Defendants therefore have a clear economic incentive to violate the discharge injunction of § 524(a)(2).

74. In addition, Defendants are on notice that this Court and others have found that Defendants' conduct is likely in violation of § 524(a)(2). See *McKenzie-Gilyard v. HSBC Bank Nevada, N.A.,* 388 B.R. 474 (Bankr. E.D.N.Y. 2007); *Torres v. Chase Bank USA, N.A.*, 367 B.R. 478 (Bankr. S.D.N.Y. 2007); *In Re Russell*, 378 B.R. 735 (Bankr. E.D.N.Y. 2007).

75. Despite this notice, Defendants have willfully, recklessly or negligently failed to correct their practice of failing to update credit information of Class Members to show that debts have been discharged in bankruptcy.

76. Defendants' actions constitute a violation of 11 U.S.C. § 524(a)(2), which provides that a discharge in bankruptcy operates as an injunction against the commencement or continuation of an action, the employment or process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor.

77. Defendants' conduct is in bad faith, is vexatious and oppressive and is done with full knowledge that it is in violation of the law.

78. Defendants' persistent refusal to provide updated credit information to the credit reporting agencies that Plaintiff's and Class Members' past due debts to Defendants are no longer "charged off" or "past due" because they have been discharged in bankruptcy is knowing and willful and constitutes a contempt of the statutory injunction of § 524(a)(2).

## THIS ACTION SHOULD BE MAINTAINED AS A CLASS ACTION

79.   Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-78 as if fully set forth herein.

80.   Plaintiff seeks to maintain this action as a class action representing a class consisting of the following:

> All individuals who, after May 3, 2007, have had a consumer credit report relating to them prepared by any of the credit reporting agencies in which one or more of their Tradeline accounts or debts with Defendants was not reported as discharged despite the fact that such debts had been discharged as a result of their bankruptcy under Chapter 7 of the Bankruptcy Code.

81.   <u>Assertainability / Numerosity</u>:  This Class is ascertainable in that it is comprised of individuals who can be identified by reference to purely objective criteria contained in the records of Defendants and the various credit reporting agencies.  On information and belief, there are many thousands of members of the Class, and therefore would be impractical to bring all or even a substantial portion of such persons before this Court as individual plaintiffs.

82.   <u>Typicality</u>:  The claims of the named Plaintiff are typical of the claims of each member of the Class they seek to represent because: (1) they all had debts owed to Defendants that were discharged in Chapter 7 bankruptcy; (2) they have all been injured by Defendants' refusal to remove the notation "charged off" or "past due/charged off" or similar notations despite the fact that the debts have been discharged in bankruptcy; and (3) each of their claims is based upon the same legal theory, *i.e.*, that Defendants have violated the injunction contained in § 524(a)(2).

83.   <u>Adequacy of Representation</u>:  Plaintiff is an adequate representative of the Class she seeks to represent because:  (a) she is willing and able to represent the proposed class and has every incentive to pursue this action to a successful conclusion; (b) her interest is not in any way antagonistic to those of the other Class Members; and (c) she is represented by counsel

16

experienced in litigating significant bankruptcy issues, including the issues specifically raised in this action, and who has represented literally hundreds of individuals who have experienced similar failures by Defendants and other institutions to comply with the injunction of § 524(a)(2).

84. <u>Commonality</u>:  There are several questions of law and fact common to all members of the Class.  The primary question of law and fact that is common to all members of the class is whether Defendants, in failing and/or refusing to update and correct the credit reports of Class Members, have acted knowingly and willfully in violation of § 524(a)(2).

85. <u>Propriety of Class Certification Under Fed. R. Civ. P. 23(b)(2) and Bankruptcy Rule 7023</u>: Class certification of all of Plaintiff's claims is appropriate under Fed. R. Civ. P. 23(b)(2) and Bankruptcy Rule 7023 because Defendants have acted and/or refused to act on grounds generally applicable to the entire class, thereby making declaratory and final injunctive relief appropriate.  Such generally applicable grounds consist of Defendants' conduct in failing and refusing to update and correct the current reports of Class Members to properly designate that the Class Members' debts have been discharged in bankruptcy pursuant to the order of this and similar courts.

86. <u>Propriety of Class Certification Under Fed. R. Civ. P. 23(b)(3) and Rule 7023</u>: Class certification of the Plaintiff's claims for willful failure to update or correct the credit reports of Class Members in violation of § 524(a)(2), is appropriate under Fed. R. Civ. P. 23(b)(3) and Bankruptcy Rule 7023.  The common question of law and fact relating to Plaintiff's claims predominate over any questions affecting only individual Members of the Class.  Moreover, the class action vehicle is superior to other available methods for the fair and efficient adjudication of these claims.  For the overwhelming majority of Members of the Class,

the amount of any potential recovery is too small to justify the cost of prosecuting each claim individually. Moreover, Defendants' violation of the injunction of § 524(a)(2) is widespread and literally nationwide. Further, requiring each Class Member to pursue his or her claim individually would entail needless duplication of effort, would waste the resources of both the parties and the Court, and would risk inconsistent adjudications.

## FIRST CAUSE OF ACTION

### Failure to Abide By the Injunction Contained In § 524(a)(2)
### (On Behalf of Plaintiff and All Class Members)

87. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-86 as if fully set forth herein.

88. By knowingly and willfully failing to update the credit reports of Class Members to signify the debts owing to Defendants have been discharged in bankruptcy Defendants have violated § 524(a)(2) and are in contempt of this Court.

89. Both pursuant to its inherent authority and pursuant to § 105 of the Bankruptcy Code, this Court may award appropriate declaratory and injunctive relief and award compensatory and punitive damages, attorney's fees and costs for Defendants' violation of § 524(a)(2).

**WHEREFORE**, Plaintiff respectfully prays:

1. That the practices of Defendants be declared to be in violation of the rights of Plaintiff and Class Members under the Bankruptcy Code and a contempt of the statutory injunction set forth in § 524(a)(2).

2. That a permanent injunction be entered requiring Defendants to immediately correct and update the credit reporting records of all Class Members by removing any negative notations such as "charge off", "past due", "late" or any other notations that indicate that the

18

discharged accounts have a current status of being still due and owing and update all such records on a permanent basis.

3. That the Court enter an Order certifying all the claims of the Class alleged herein pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) and Bankruptcy Rule 7023 for willful violation of the injunction set forth in § 524(a)(2).

4. That this Court order that Defendants be held in contempt of court for their willful violation of the injunction set forth in § 524(a)(2), and that it be assessed damages, fines, penalties and punitive damages in amounts to be determined by the Court.

5. That Defendants be ordered to disgorge and pay to the individual Class Members all funds received by Defendants or by any purchasers of Defendants' debt on debts that were discharged in bankruptcy or were the subject of a bankruptcy proceeding before such payment was made by the Class Members.

6. That this Court award Plaintiff and the Class the costs of this action together with reasonable attorney's fees as the Court may determine.

7. That the Plaintiff and Class Members be awarded such other and further relief as may be found appropriate and as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 28, Plaintiff hereby demands a trial by jury on all issues so triable if this Court determines that any issue in this matter is appropriate for a jury trial.

Date: November 18, 2014        By:    /s/ George F. Carpinello
                                      **BOIES, SCHILLER & FLEXNER LLP**
                                      George F. Carpinello
                                      Adam R. Shaw
                                      30 South Pearl St., 11th Floor
                                      Albany, New York 12207
                                      (518) 434-0600

**CHARLES JUNTIKKA & ASSOCIATES LLP**
Charles Juntikka
1250 Broadway, 24th Floor
New York, NY 10001
(212) 315-3755

*Attorneys for Plaintiff*