UNITED STATES BANKRUPTCY COURT                    FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>KIMBERLY BRUCE,<br><br>               Debtors. | Case No. 13-22088 (SHL)<br><br>Chapter 7 |
| KIMBERLY BRUCE,<br><br>          Plaintiff, on behalf of herself<br>          and all others similarly<br>          situated,<br><br>   v.<br><br>CITIGROUP, INC., CITIBANK, N.A.,<br>AND CITIBANK (SOUTH DAKOTA),<br>N.A.,<br><br>          Defendants. | Adv. Proc. No. 14-08224 (DSJ) |

**DECISION AND ORDER DENYING DEFENDANTS' MOTIONS TO COMPEL ARBITRATION, TO DISMISS THE FIRST CAUSE OF ACTION OF THE SECOND AMENDED COMPLAINT, AND TO DISMISS OR STRIKE ITS CLASS ALLEGATIONS, AND GRANTING DEFENDANTS' MOTION TO STRIKE THE SECOND CAUSE OF ACTION'S REVISED CLASS ALLEGATIONS**

**APPEARANCES:**

**BOIES SCHILLER FLEXNER LLP**
*Counsel for Plaintiff*
30 South Pearl Street, 12th Floor
Albany, NY 12207
By:   George F. Carpinello
      Adam R. Shaw
      Jenna C. Smith

**CHARLES JUNTIKKA & ASSOCIATES LLP**
*Counsel for Plaintiff*
247 W. 30th Street, #12
New York, NY 10001

By:    Charles Juntikka

**SIDLEY AUSTIN LLP**
*Counsel to Citigroup Inc. and Citibank, N.A., successor in interest to Citibank (South Dakota),*
*Defendants*
247 W. 30th Street, #12
New York, NY 10001
By:    Benjamin R. Nagin
       Eamon P. Joyce
       Jon W. Muenz


**HONORABLE DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

## I.    INTRODUCTION

Plaintiff Kimberly Bruce owed credit card debt to Citibank (formally a party here as

Citigroup Inc. and Citibank, N.A., successor in interest to Citibank (South Dakota) (collectively,

"Citibank" or the "Defendants")). In 2013, Ms. Bruce successfully obtained a discharge in a

chapter 7 bankruptcy case in this Court. She alleges that she is entitled to a declaratory judgment

and that Citibank is liable to her for violating the terms of her discharge order and injunction due

to Citibank's failure to instruct credit reporting agencies that her pre-petition debt was

"discharged," instead allowing to persist a notation that that debt was merely "charged off" as

uncollectible. Further, she alleges that Citibank's refusal to correct her credit records was in the

exercise of a Citibank policy that harmed her and similarly situated debtors/cardholders and

benefitted Citibank in various ways. Plaintiff's theory at least in part is that Citibank's alleged

practice of not causing discharges to be reflected in credit reports about consumers whose credit

card debt Citibank had sold to third parties allowed Citibank to realize a higher price in sales of

its entitlements on account of defaulted debt, in part because Citibank's practices enabled the

debt purchaser to coerce Ms. Bruce and other cardholders to pay off discharged debt (for which

by definition Ms. Bruce was not personally liable) in order to clear up a credit rating that

Citibank caused to be misleadingly negative. Ms. Bruce further contends that typically

unwealthy individual Chapter 7 debtors lack the resources and sophistication to bring individual

challenges to Citibank's conduct, such that a class action is the best or only way to hold Citibank

to account for its allegedly unlawful policy. Further complicating matters, Ms. Bruce's contract

with Citibank had a robust mandatory arbitration clause requiring all disputes between her and

Citibank to be arbitrated.

## II.    PROCEDURAL BACKGROUND

As the case's age suggests, Ms. Bruce's case has a lengthy litigation history highlighted

by two separate trips to the Second Circuit. The outcome of those prior proceedings is that: (1)

Ms. Bruce has been definitively held to have stated a plausible claim that Citibank violated the

discharge injunction in Ms. Bruce's case; (2) Ms. Bruce is not bound by her contractual

arbitration requirement insofar as she is seeking relief for contempt by Citibank in the form of its

violation of the discharge order in her case because the usual broad enforcement of arbitration

agreements would improperly divest this Court of its authority to consider and remedy

Citibank's possible contempt of the Court's prior order; and (3) and Ms. Bruce was not entitled

to seek relief on behalf of a "nationwide class" because her sole adequately pled theory was for

contempt due to violation of a discharge order, which is case-specific and grounded in individual

courts' authority to enforce their own orders. *See generally Bruce v. Citigroup Inc.*, 75 F.4th 297

(2d Cir. 2023).

Following remand and following an extended period of inaction, Ms. Bruce filed a new

second amended complaint (the "SAC" or "Second Amended Complaint") [ECF No. 155] to add

a new first cause of action that explicitly seeks declaratory, monetary, and injunctive relief for an

asserted violation of Bankruptcy Code Section 524 without invoking either Ms. Bruce's

3

discharge order itself or the Court's contempt powers. The Second Amended Complaint also maintains a cause of action that seeks contempt relief, which the Circuit has held is adequately pled as to Ms. Bruce; seeking the greatest breadth of recovery despite the Circuit's rejection of a nationwide class, Ms. Bruce now seeks class-wide contempt relief for all debtors who received a discharge order from the Bankruptcy Court in this District, and whose credit reports Citibank declined or failed to update to reflect the debtors' discharges. Ms. Bruce justifies this S.D.N.Y.-specific class-wide claim by reference to the Second Circuit's prior wording that arguably limited its ruling to the rejection of a "nationwide" class, and to the Circuit's observation that each individual court has the authority to enforce its own orders. See *Bruce*, 75 F.4th 297, 302–06.

Citibank has moved for an order (1) to compel arbitration of Plaintiff's first cause of action on an individual basis pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA") and to stay proceedings, or, (2) in the alternative, to dismiss the first cause of action pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6) and Federal Rules of Bankruptcy Procedure 7008 and 7012(b), or, (3) in the further alternative, to dismiss or strike its class allegations pursuant to Federal Rule of Civil Procedure 12(f), and (4) to strike the second cause of action's revised class allegations, *i.e.*, the demand for District-wide class relief on a contempt theory (the "Motion") [ECF No. 156]. Accompanying the Motion is Defendants' memorandum of law in support of the Motion ("Defendants' Memo") [ECF No. 157].

Plaintiff filed an opposition to the Motion ("Plaintiff's Opp.") [ECF No. 162], to which Defendants replied (Defendants' "Reply") [ECF No. 166]. The Court also received (1) a letter from Plaintiff dated May 13, 2025 ("May 13 Letter") [ECF No. 163], alerting the Court to the recently issued decision in *Golden v. Nat'l Collegiate Student Loan Trust 2006-4 (NCT 2006) (In*

4

*re Golden)*, 671 B.R. 544 (Bankr. E.D.N.Y. 2025) (Stong, J.); (2) a letter from Defendants dated
May 15, 2025 ("May 15 Letter") [ECF No. 164] responding to the May 13 Letter; and (3) a letter
from Plaintiff dated May 16, 2025, responding to the May 15 Letter [ECF No. 165].

The Court conducted an initial hearing on May 28, 2025, and, in light of developments in
relevant case law, the Court directed the parties to meet and confer regarding the submission of
supplemental briefing. On June 25, Plaintiff filed a supplemental memorandum of law in
opposition to the Defendants' Motion ("Plaintiff's Supp. Memo.") [ECF No. 168], and
Defendants filed a supplemental response ("Defendants' Supp. Br.") [ECF No. 169]. Even after
this supplemental briefing, the Court received several additional letters from the parties,
including: (1) a letter from Plaintiff dated October 3, 2025 ("October 3 Letter") [ECF No. 175],
alerting the Court to a relevant and recently issued decision by another judge in this district in
*Anderson v. Credit One Bank, N.A. (In re Anderson) ("Anderson III")*, No. 14-22147 (JPM),
2025 WL 2758521 (Bankr. S.D.N.Y. Sept. 29, 2025) (Mastando, J.); (2) a letter from Defendants
dated October 9, 2025 ("October 9 Letter") [ECF No. 176] responding to the October 3 Letter;
and (3) a letter from Plaintiff dated October 21, 2025 [ECF No. 177] responding to the October 9
Letter.

The Court heard oral argument on the Motion on November 13, 2025, and reserved
decision. The issues presented are complex and in some ways novel as Plaintiff attempts to carve
a path that will allow her to proceed on a class-wide basis while avoiding both the effect of her
contract's arbitration clause, and the ordinarily individualized nature of contempt remedies for
violations of orders, here, the discharge order and injunction that Ms. Bruce obtained back in
2014.

Ultimately, the Court concludes in essence that Plaintiff is entitled to pursue a declaratory judgment cause of action (and related demands for monetary and other relief) relating to Citibank's alleged intentional and uniform policy of violating the discharge provisions of Section 524, and that many of the reasons the Second Circuit identified for not requiring arbitration of contempt claims for violation of discharge injunctions apply here, such that enforcing the arbitration clause in Ms. Bruce's contract would improperly render practically irremediable Citibank's allegedly unlawful intentional practice of frustrating the effectiveness of cardholders' Chapter 7 discharge orders, thus frustrating a core and defining characteristic of the bankruptcy process. Thus, and for reasons explained further below, the Court denies Citibank's Motion to compel arbitration of the first cause of action, denies Citibank's Motion to dismiss the first cause of action, and denies Citibank's Motion to strike or dismiss the class allegations in the first cause of action. The Court agrees with Citibank, however, that contempt remedies are not properly pursued on a class-wide basis notwithstanding Plaintiff's proposed narrowing of the class to individuals who received a discharge order in this District. The Court therefore grants Citibank's Motion to strike or dismiss the revised district-wide class allegations in Plaintiff's second cause of action.

In view of the unsettled nature and novelty of some of the controlling issues, the Court would welcome an application (to the extent necessary) to permit an interlocutory appeal of this ruling.

### III.   <u>FACTUAL BACKGROUND</u>

The following facts are drawn from the operative Second Amended Complaint and documents incorporated therein, as well as filings in Plaintiff's underlying bankruptcy case.

Unless otherwise noted, the facts are assumed true only for purposes of resolving the present motion. Relevant background is as follows.

### A.  The Credit Account and Governing Agreement

In April 2007, Citibank, N.A. issued to Plaintiff an ExxonMobil-branded credit-card account. The account was governed by a written card agreement that included a choice-of-law provision selecting federal law and the law of South Dakota, and a broad arbitration clause permitting either party to require binding arbitration of any claim or dispute arising out of the account or the parties' relationship (*i.e.*, "All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek."). *See* Declaration of Susan Kwiatek ¶¶ 5–6 [ECF No. 8]; ECF No. 8-1 at 10–13 (Card Agreement).

Plaintiff stopped making payments in August 2009, after which Citibank classified the account as charged off. *See* ECF No. 50-2 at 9 (page 5 of 11 of Equifax Credit Report); SAC ¶ 19.

### B.  Sale of the Account to Midland

In 2011, Citibank sold and transferred its rights in the charged-off account to Midland Funding LLC ("Midland") pursuant to a purchase and sale agreement. SAC ¶ 31; ECF No. 53. Under that Agreement, Midland assumed responsibility for accounts that later became involved in bankruptcy cases and Midland was required to perform scrubs to determine whether an account had been discharged. Citibank retained responsibility for forwarding certain post-sale payments and remained identified as the creditor on consumers' credit reports. SAC ¶¶ 33–41.

Plaintiff alleges that Midland could not modify tradelines listing Citibank as the creditor and that, as a practical matter, only Citibank could request changes to those tradelines.[1] *Id.* ¶¶ 37–41.

### C.  Plaintiff's Bankruptcy and Discharge

On January 24, 2013, nearly two years after the sale to Midland, Plaintiff filed a voluntary Chapter 7 petition in the United States Bankruptcy Court for the Southern District of New York. *See* Case No. 13-22088, ECF No. 1. In her schedules, she listed Citibank for "notice only," showing a zero balance on the Citibank account. On May 7, 2013, the bankruptcy court entered a discharge order under 11 U.S.C. § 524(a)(2). *Id.*, ECF No. 7.

### D.  Post-Discharge Credit Reporting and Plaintiff's Requests to Citibank

In September 2013, Plaintiff obtained an Equifax credit report reflecting the account as "charged off" and "transferred/sold," with a zero balance, but without any notation or other indication that the debt had been included in bankruptcy. SAC ¶ 23; ECF No. 50-2 at 7–11.

In December 2013, Plaintiff's counsel contacted Citibank, asserting that the reporting was inconsistent with the discharge and requesting that Citibank remove the charge-off notation. SAC ¶¶ 25–28. Plaintiff sought deletion of the tradeline from Plaintiff's credit history. ECF No. 50-2 at 3. Citibank declined to make the requested change at that time.

Plaintiff alleges that the forward flow agreement governing the sale of charged-off accounts did not provide for reporting an account as discharged in bankruptcy, and that Citibank knew credit reporting agencies would not accept modifications from Midland where Citibank remained the listed creditor. SAC ¶¶ 31–41. She further alleges that Citibank's refusal to correct tradelines for debts it had sold exerted pressure on discharged debtors to make payments in order to clean their credit files, and that Citibank had long been aware that such alleged conduct had

---

[1]    A "tradeline" is a record of a specific credit account, like the credit card issued by Citibank to Plaintiff.

been challenged as violating Section 524 of the Bankruptcy Code. *Id.* ¶¶ 42, 45, 48–49, 69–73, 77–78.

### E.   Reopened Bankruptcy Case and Initiation of This Proceeding

On March 13, 2014, Plaintiff moved to reopen her Chapter 7 case in order to pursue contempt proceedings against Citibank for alleged violation of the discharge injunction. Case No. 13-22088, ECF No. 9. Shortly thereafter, Citibank requested deletion of the tradeline at issue. SAC ¶ 30.

On April 30, 2014, Plaintiff commenced this adversary proceeding, alleging that Citibank's failure to update or delete credit-reporting tradelines for accounts it had sold prior to bankruptcy constituted an act to collect a discharged debt in violation of § 524(a)(2). *See* ECF No. 1; SAC ¶¶ 81, 90–95.

### F.   Procedural History of this Action

Citibank moved to compel arbitration pursuant to the Card Agreement and, in the alternative, moved to dismiss and to strike Plaintiff's class allegations. *See* ECF No. 5; ECF No. 47. The Court (Drain, J.) denied arbitration, concluding that compelling arbitration of an alleged violation of the discharge injunction would conflict with the Bankruptcy Code. *See* ECF No. 38 (incorporating Corrected and Modified Bench Ruling, dated November 10, 2014, on a similar motion made in *Belton v. GE Consumer Capital Lending (In re Belton)*, 14-8223 (RDD) (Bankr. S.D.N.Y. Nov. 12, 2014) [ECF No. 79-1]). The district court initially reversed the Court's decision in this case and in *Belton*, *sub nom. Belton v. GE Cap. Consumer Lending, Inc. (In re Belton)*, No. 15-CV-1934 (VB), 2015 WL 6163083, at *10 (S.D.N.Y. Oct. 14, 2015), but later vacated its decision, *see Belton v. GE Capital Consumer Lending, Inc. (In re Belton),* No. 15-cv-1934 (VB), 2019 WL 1017293, at *4 (S.D.N.Y. Mar. 4, 2019), following the Second Circuit's

decision in *Anderson v. Credit One Bank, N.A. ("Anderson I")*, 884 F.3d 382 (2d Cir. 2018), *cert. denied*, 586 U.S. 823 (2018), which held that discharge-injunction enforcement can be pursued only in contempt proceedings before the issuing bankruptcy court. The Second Circuit affirmed. *See In re Belton v. GE Cap. Retail Bank (In re Belton)*, 961 F.3d 612, 617–18 (2d Cir. 2020).

Separately, Citibank sought to strike Plaintiff's nationwide class allegations, *see* ECF No. 47, which the Court denied. *See* ECF No. 131 (denying the motion to dismiss the complaint and, alternatively, to strike the class allegations); Hr. Tr. 141:3-8, July 22, 2021 [ECF No. 135]; No. 21-cv-7455 (CS), ECF No. 15 (S.D.N.Y. Dec. 27, 2021) (certifying Adv. Proc. No. 14-08224, ECF No. 131 for direct appeal to the Second Circuit); No. 22-134, ECF No. 33 (2d Cir. May 4, 2022) (granting interlocutory appeal). That effort culminated in the Second Circuit's decision in *Bruce v. Citigroup, Inc.*, 75 F.4th 298 (2d Cir. 2023), which held that the Bankruptcy Code does not authorize one bankruptcy court to enforce discharge injunctions issued by other bankruptcy courts and that nationwide classes seeking such relief are unavailable. *Id.* at 301–06. The Second Circuit affirmed the denial of Citibank's motion to dismiss for failure to state a claim. *Id.* at 308–09. The Supreme Court denied certiorari. *See* 144 S. Ct. 565 (2024).

Following issuance of the mandate and a lengthy period of inactivity, in January 2025, Plaintiff sought leave to amend. *See* ECF No. 153. The Second Amended Complaint, now the operative pleading, contains substantially the same factual allegations but now explicitly divides Plaintiff's claims into two causes of action. The first cause of action seeks declaratory, monetary, and restitutionary relief under the Declaratory Judgment Act and the Court's inherent authority and is pleaded on behalf of a putative nationwide class. SAC ¶¶ 91–93 (citing 28 U.S.C. §§ 2201 (any court "may declare" interested party's rights in specified circumstances), 2202 ("[f]urther

necessary or proper relief based on a declaratory judgment . . . may be granted . . . against any adverse party whose rights have been determined by such judgment"). The second cause of action restates her contempt claim under Section 524(a)(2), now pleaded on behalf of a putative class limited to this District, meaning consisting of debtors who (i) secured discharge orders in Chapter 7 bankruptcies within this District and (ii) were Citibank cardholders who sere subject to Citibank's complained-of practice or policy of not reporting bankruptcy discharges to credit reporting agencies, at least when Citibank had sold the credit card debt to a third party. *Id.* ¶¶ 94-95. Citibank thereafter filed the Motion that is the subject of this decision.

## IV.    <u>JURISDICTION</u>

The Court has original jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.). This adversary proceeding presents a "core" proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). Venue in the Southern District of New York is proper under 28 U.S.C. §§ 1391(b)(1) and (2) because Defendants reside in this District within the meaning of *id.* § 1391(c)(2), Plaintiff resides in this district, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

## V.    <u>LEGAL STANDARD ON THE MOTION</u>

### A.  Motion to Dismiss

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must assess the legal sufficiency "of the allegations in support of a complaint in light of the pleading requirements" set forth in Rule 8 of the Federal Rules of Civil Procedure. *In re Revlon, Inc.*, No. 22-10760 (DSJ), 2023 WL 2229352, at *10–11 (Bankr. S.D.N.Y. Feb. 24, 2023) (quoting *O'Connor v. DL-DW Holdings, LLC (In re Extended Stay, Inc.)*, No. 09-13764-JLG,

2020 WL 10762310, at *5 (Bankr. S.D.N.Y. Aug. 8, 2020)). To survive a Rule 12(b)(6) motion,

a plaintiff must show that the complaint "contain[s] sufficient factual matter, accepted as true, to

'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts apply the "[t]wo working

principles" articulated in *Ashcroft v. Iqbal* to evaluate a motion to dismiss. *In re Tops Holding II

Corp.*, 646 B.R. 617, 646 (Bankr. S.D.N.Y. 2022) (quoting *Pension Benefit Guar. Corp. v.

Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 717 (2d Cir. 2012)).

First, "[w]hile legal conclusions can provide the framework of a complaint, they must be

supported by factual allegations." *Iqbal*, 556 U.S. at 679 (2009). Rule 8's pleading standard does

not necessitate detailed factual allegations, but "demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation." *Id.* at 678–79 (2009). In evaluating factual

sufficiency, the court must accept as true all factual allegations set forth in the complaint and

draw all reasonable inferences in the plaintiff's favor. *Id.* at 663 (2009). In doing so, the court

must be able to identify the elements of each cause of action and determine whether the

complaint states sufficient facts to support recovery. *Id.* at 675 (2009).

Second, "only a complaint that states a *plausible* claim for relief survives a motion to

dismiss." *Id.* at 679 (2009) (emphasis added). The determination of whether a complaint states a

plausible claim for relief is a "context-specific task that requires the reviewing court to draw on

its judicial experience and common sense." *Id.* "To be plausible, the complaint need not show a

probability of plaintiff's success, but it must evidence more than a mere possibility of a right to

relief." *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013)

(internal citations omitted). "Because plausibility is a standard lower than probability, a given set

of actions may well be subject to diverging interpretations, each of which is plausible." *Anderson*

*News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012). Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal citations omitted).

On a motion to dismiss pursuant to Rule 12(b)(6), "courts must consider the complaint in its entirety as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). In doing so, the Court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" as well as any documents "integral" to the complaint, *i.e.*, "where the complaint 'relies heavily upon [the document's] terms and effects.'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

## B. Declaratory Judgment Act

The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 *et seq.*, provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," in a case meeting the DJA's requirements. 28 U.S.C. § 2201(a). Section 2202 of the DJA, captioned "Further Relief," provides that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. Relief under Section 2202 can include restitution or other

13

financial relief and/or an injunction. *Powell v. McCormack*, 395 U.S. 486, 499 (1969); *Allstate Indem. Co. v. Dixon*, 932 F.3d 696, 703 (8th Cir. 2019).

A bankruptcy court is a "Court of the United States" and therefore possesses authority to adjudicate matters arising under the Declaratory Judgment Act. As one court in this Circuit has explained, "[t]he Bankruptcy Court is a 'Court of the United States' and has power to hear declaratory matters pursuant to 28 U.S.C. §§ 2201–2202." *Katz v. Wagner (In re Metiom, Inc.)*, 2002 WL 433588, at *1 (S.D.N.Y. Feb. 25, 2002). More specifically, under the Declaratory Judgment Act, "the bankruptcy court has the power to issue declaratory judgments when the matter in controversy regards the administration of a pending bankruptcy estate." *Sears, Roebuck & Co. v. O'Brien*, 178 F.3d 962, 964 (8th Cir. 1999).

The DJA serves "'a broad, remedial purpose and, therefore, should be construed liberally.'" *Metiom*, 2002 WL 433588, at *2 (quoting *Akzona Inc. v. E.I. duPont de Nemours & Co.*, 662 F. Supp. 603, 615 (D. Del. 1987)); *see also Treemond Co. v. Schering Corp.*, 122 F.2d 702, 705 (3d Cir. 1941) (rejecting a narrow interpretation of "case or controversy" in patent actions under the Declaratory Judgment Act); 4 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1238 (4th ed. 2024) (noting that "[i]n order to effectuate the purpose of the [Declaratory Judgment] Act ... complaints should be construed liberally").

The Declaratory Judgment Act does not, however, itself confer subject matter jurisdiction. Rather, in enacting the Act, "Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." *Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671 (1950). Consistent with that principle, the Second Circuit has explained that "[t]he Declaratory Judgement Act permits declaratory relief only in cases presenting 'actual controvers[ies],' 28 U.S.C. § 2201(a), a requirement that incorporates into the statute the case or

14

controversy limitation on federal jurisdiction found in Article III of the Constitution." *Niagara*

*Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir. 1996).

### C. Motions to Strike

The procedural framework governing a motion to strike class allegations in an adversary

proceeding is supplied by Federal Rule of Civil Procedure 23(a), made applicable here by

Bankruptcy Rule 7023. Rule 23 provides that "one or more members of a class may sue ... as

representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical;

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).

Federal Rule of Civil Procedure 12(f), made applicable to adversary proceedings by

Bankruptcy Rule 7012(b), authorizes the court to strike from a pleading "an insufficient defense

or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Rule

may be invoked either on motion of a party or by the court acting *sua sponte*. *Id.*

Similarly, Federal Rule of Civil Procedure 23(d)(1)(D), made applicable by Bankruptcy

Rule 7023, permits the court to enter an order that "require[s] that the pleadings be amended to

eliminate allegations about representation of absent persons and that the action proceed

accordingly." Fed. R. Civ. P. 23(d)(1)(D). In the context of a putative class action, these Rules

empower the court to excise class allegations from a complaint—and thereby foreclose class

treatment—before the complaint has been answered or subjected to a motion to dismiss and

before any discovery, including class discovery, has taken place, but such motions should not be routine. As one district court has explained:

> Motions to strike are generally looked upon with disfavor [and] a motion to strike class allegations . . . is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.

*Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (quoting *Chenensky v. N.Y. Life Ins. Co.*, No. 07 Civ. 11504, 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27, 2011)). For these reasons, the court observed, "[g]enerally speaking, then, motions of this kind are deemed procedurally premature." *Id.* Judge Stein has persuasively articulated the right balance of these considerations: "a motion to strike class allegations . . . may be addressed prior to the certification of a class if the inquiry would not mirror the class certification inquiry and if resolution of the motion is clear." *In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92 (SAS), 2008 WL 2050781, at *2 (S.D.N.Y. May 13, 2008) (citing cases) (internal citations omitted).

Consistent with that view, *Chen-Oster* explained that a motion to strike class allegations may be appropriate where it "addresses issues 'separate and apart from the issues that will be decided on a class certification motion,'" in which case the motion would not be "procedurally premature." *Chen-Oster*, 877 F. Supp. 2d at 117 (quoting *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06-CIV-6198 (LAK) (JCF), 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008)).

## VI.   **DISCUSSION**

This decision addresses in turn Citibank's four main arguments, beginning with arbitrability as a threshold question.

**A.  Citibank's Motion to Compel Arbitration of Plaintiff's First Cause of Action Is Denied**

Plaintiff undisputedly entered into a valid, binding arbitration agreement when she opened her Citibank credit account, *see Belton*, 2015 WL 6163083, at *4 (arbitration agreement at issue in Plaintiff's case is valid). On review, the Second Circuit left this ruling undisturbed. *See Belton*, 961 F.3d at 615 (2d Cir. 2020); *see also* ECF No. 8-1 at 10–11 (card agreement requires that any questions about how to interpret the provision's scope "shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced"). Plaintiff has not argued otherwise and it would be inappropriate to revisit this question now. *See Aramony v. United Way of Am.*, 254 F.3d 403, 410–11 (2d Cir. 2001) (describing law of the case doctrine).

The Federal Arbitration Act ("FAA") provides, in relevant part: "A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The statute reflects a "liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks omitted), and establishes a "preference for enforcing arbitration agreements ... even when the claims at issue are federal statutory claims." *Parisi v. Goldman, Sachs & Co.,* 710 F.3d 483, 486 (2d Cir. 2013).

Thus, it is clear that the two threshold determinations a court must make in deciding whether to compel arbitration are present here, namely, "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope

of the arbitration agreement." *In re Am. Express Fin. Advisors Secs. Litig.,* 672 F.3d 113, 128 (2d Cir. 2011).

In addition, however, where, as here, any of the claims arise under a federal statute, the Court must further consider whether Congress intended those statutory claims to be subject to arbitration and whether compelling arbitration would "prevent the 'effective vindication' of [the] federal statutory right." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013). Thus, despite the unmistakable applicability of the arbitration agreement here, the Court must examine whether the Bankruptcy Code preempts or overrides the Federal Arbitration Act with respect to Plaintiff's first cause of action.

Citibank's Motion seeks entry of an order compelling Plaintiff to arbitrate her First Cause of Action, which seeks declaratory, monetary, and restitutionary relief on behalf of Plaintiff on an individual basis and on behalf of all class members due to Citibank's alleged systemic violation of Bankruptcy Code 524; the Motion further seeks to stay all claims pending the outcome of the arbitration proceeding. *See* Defendants' Memo at 2. Citibank argues broadly that the dispute regarding the first cause of action is subject to arbitration because (1) it is within the scope of the valid, binding arbitration clause contained within Plaintiff's cardholder agreement and (2) Plaintiff has not demonstrated that Congress intended to foreclose arbitration or arbitration would prevent the effective vindication of Plaintiff's "rights." *See id.* at 17-22. More specifically, Citibank argues that Plaintiff cannot satisfy its burden to demonstrate "that Congress intended to foreclose arbitration or that arbitration would prevent vindication of Plaintiff's 'rights,'" *i.e.*, the "effective vindication" exception, because the DJA does not create substantive, statutory rights. Rather, Citibank asserts that the DJA's operation is procedural only and leaves a party's substantive, statutory rights unchanged. In other words, Plaintiff's

Declaratory Judgment Act claim in her first cause of action can be "effectively vindicated" in an arbitral forum using arbitral procedures because adjudication of Plaintiff's procedural rights will not disturb her statutory, substantive rights. *See id.* at 20-22.

Plaintiff contends that her first cause of action cannot be subject to arbitration because there is no authority for "[Citibank's] argument that the claims must now be arbitrated because the remedy sought is a declaratory judgment" rather than a contempt remedy. Plaintiff's Opp. at 12. Plaintiff further argues that such a result would run afoul of Second Circuit precedent protecting the quintessentially core bankruptcy function of the discharge. *See id.* at 10-12 (citing *Anderson I*, 884 F.3d at 388-92).

The Second Circuit's prior decision in this litigation did not decide whether declaratory, monetary, and restitutionary relief is available to Plaintiff under the DJA, although the Circuit did decide that Citibank's alleged conduct, *i.e.*, its "refusal to correct her tradeline [stemming] from a policy of coercing unwitting debtors to pay off discharged debts," *Bruce*, 75 F.4th at 308, stated a plausible claim that Citibank violated the discharge. In *Bruce*, despite considerable argument from the parties about whether Plaintiff was entitled to pursue a declaratory judgment, the Second Circuit reviewed the record and the operative complaint, and concluded that Plaintiff did not assert such a DJA claim; the Circuit thus did not decide whether Ms. Bruce could properly pursue declaratory relief on a class-wide basis. *Id.* at 299 ("As an initial matter, we reject plaintiff's suggestion that she has asserted separate and distinct claims for declaratory relief and damages."). The Second Circuit also therefore had no need to decide whether a claim for declaratory, monetary, and restitutionary relief is subject to mandatory arbitration. *Id.* at 306 n.9 ("whether and to what extent relief short of contempt sanctions is available in the case of a discharge violation for which a fair ground of doubt remains is a question for another day").

19

Plaintiff's post-appeal Second Amended Complaint squarely raises the question that the

Circuit did not answer, namely, whether a claim for declaratory judgment and associated relief

based on alleged systemic violations of the Bankruptcy Code's discharge provision, Section 524,

is available, and is or is not subject to mandatory arbitration. In addressing this question, this

Court considers the principles articulated by the Second Circuit in *Bruce* and *Anderson I* in

deciding that claims for contempt regarding the violations of a discharge injunctions are not

arbitrable, and concludes that a claim under the Declaratory Judgment Act is similarly non-

arbitrable. The Second Circuit's decisions emphasized that the discharge of debt is a bedrock

function and characteristic of the Bankruptcy Code and at the heart of the bankruptcy court's

unique powers. *Anderson I*, 884 F.3d at 386 ("An attempt to coerce debtors to pay a discharged

debt is thus an attempt to undo the effect of the discharge order and the bankruptcy proceeding

itself."), *cf.* 11 U.S.C. § 524. This conclusion was strengthened by the Circuit's conclusion that

Plaintiff sought a finding that Citibank was in contempt of the discharge order in her case, and

the Circuit further was influenced by ample authority that courts have authority to enforce their

own orders, a principle so important that it prevailed even in the presence of an explicit and

otherwise-binding contractual arbitration requirement. *See Bruce*, 75 F.4th at 305 (citing *Belton*,

961 F.3d at 617); *Anderson I*, 884 F.3d at 389–92.

But the Circuit's decisions more broadly recognized that compelling arbitration of claims

alleging that a creditor sought to collect a discharged debt is fundamentally at odds with the core

purposes of the Bankruptcy Code, regardless of whether Plaintiff seeks relief through contempt

or by some other means. For example, in describing the nature of the claim at issue, the Second

Circuit referred to "a claim based on an alleged violation of Section 524(a)(2)," without limiting

its discussion to contempt as the exclusive vehicle for such claims. *Anderson I*, 884 F.3d 382,

389 (2d Cir. 2018). The panel's reasoning likewise focused not just on the importance of

preserving courts' contempt power in response to violations of orders, but also on the bankruptcy

court's unique role in enforcing the discharge injunction and on the incompatibility between that

role and arbitration of disputes concerning alleged violations of Section 524(a)(2). *See id.* at

389–91 ("arbitration of a claim based on an alleged violation of Section 524(a)(2) would

'seriously jeopardize a particular core bankruptcy proceeding'" (quoting *U.S. Lines, Inc. v. Am.*

*S.S. Owners Mut. Protect. & Indem. Ass'n, Inc. (In re U.S. Lines, Inc.)*, 197 F.3d 631, 641 (2d

Cir. 1999)) and emphasizing that (1) the discharge injunction is "integral" to "the bankruptcy

court's ability to provide debtors with the fresh start," the arbitration of which would present "an

inherent conflict" with the Code, *id.* at 390; (2) the claim, part of an ongoing bankruptcy matter,

requires "continuing court supervision," because "the integrity of the discharge must be

protected indefinitely," *id.*; and (3) the bankruptcy court's exclusive equitable powers and unique

expertise to enforce its own injunctions are central to the structure and purpose of the Code

(citing *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006))).

Although the Circuit declined to decide whether its non-arbitrability holding extending to

DJA claims like the one now before this Court, and some of the factors the Circuit identified

related to the importance of a court's enforcement of its prior orders, the Court concludes

substantial parts of the Circuit's analysis are enough to extend and apply to Plaintiff's request for

declaratory relief, which rests on the same alleged violation of Section 524(a)(2) but without

reliance on a discharge *order*. *See Anderson v. Credit One Bank, N.A. (In re Anderson)*

*("Anderson II")*, 668 B.R. 753, 782–83 (Bankr. S.D.N.Y.) (reaching the same conclusion in a

virtually identical action); *Anderson III*, 673 B.R. at 553 (on rehearing, the "Court does not need

to revisit the question of whether the FAA preempts the Bankruptcy Code in the case of a

21

binding arbitration clause and a discharge violation claim; the Second Circuit clearly held that it does not."). Citibank's attempt to limit the impact of the Circuit's ruling to claims for contempt results from an unduly cramped reading of the Circuit's decision, disregarding the Circuit's consistent emphasis of the centrality of effective discharges on the bankruptcy process, the bankruptcy courts' authority, and the systemic importance of upholding the Bankruptcy Code itself. Thus, Plaintiff's strategic maneuver to avoid limits the Circuit has placed on the availability of class-wide relief for contempt of orders does not render inapplicable the requirement that courts consider whether compelling arbitration would "prevent the 'effective vindication' of [the] federal statutory right," *Italian Colors Rest.*, 570 U.S. at 235, *i.e.*, the right to have one's discharge entitlements recognized, and not to be thwarted by self-interested routine actions or inactions of a major financial institution. To rule otherwise would, in reality, deprive most former Citibank cardholders of redress, because individual cardholder-debtors are unlikely to have the resources and a large enough potential recovery to support pursuit of individual claims against Citibank, while any redress would lack the potential for consistency and authoritative resolution that judicial proceedings and the availability of substantive review on appeal can provide.

### B. Citibank's Motion to Dismiss Plaintiff's First Cause of Action for Declaratory Judgment, Monetary, and Restitutionary Relief Is Denied, as Is Its Motion in the Alternative to Dismiss or Strike Its Class Allegations

Next, Citibank argues that Plaintiff failed to state a claim with respect to her first cause of action for declaratory, monetary, and restitutionary relief and moves the Court to dismiss or strike the class allegations in Plaintiff's first cause of action in the event that the Court does not dismiss it.

1.  Plaintiff States a Claim for Declaratory Judgment, Monetary, and

Restitutionary Relief

As a preliminary matter, Citibank's derision regarding the new first cause of action is

misplaced. Citibank refers to it as a "so-called" cause of action and "merely . . . a new (non-

existent) label on the same liability theory." Defendants' Memo at 23. But the Second Amended

Complaint comes in the aftermath of the Second Circuit's *Bruce* decision, which Plaintiff

contends surprised Plaintiff by concluding that Plaintiff's earlier pleadings did not adequately

present a Declaratory Judgment Act claim. The Second Amended Complaint makes explicit that

Plaintiff is seeking a declaration under 28 U.S.C. § 2201 that Citibank's conduct *vis-à-vis* Ms.

Bruce and similarly situated individuals violates Section 524 of the Bankruptcy Code, and that,

in addition, Plaintiff is seeking "monetary and restitutionary" relief, *see* SAC ¶¶ 92-93, as

"[f]urther necessary and proper relief" under 28 U.S.C. § 2202. That tracks the language of the

Declaratory Judgment Act, and so the relevant question is whether the statute's requirements are

met and jurisdiction exists, not whether Plaintiff has recognizably styled a demand under the

Declaratory Judgment Act. *See Smith v. Lehman,* 689 F.2d 342, 345 n.5 (2d Cir. 1982).

More substantively, Citibank asserts that Plaintiff's claim fails because a contempt

proceeding is the "exclusive means" of "enforcing alleged violations of discharge injunctions

issued under Section 524(a)(2)." Defendants' Memo at 23. Plaintiff's claim, Citibank argues, (1)

fails at the threshold because it pleads only remedies, rather than any cognizable substantive

claim, and the DJA does not supply one, and (2) Plaintiff's invocation of the Court's "statutory

and inherent authority" adds nothing, because contempt is the sole mechanism for enforcing a

discharge injunction and Section 524 creates no independent private right of action. *Id.* at 23-26.

With respect to its second argument, Citibank further argues Section 105(a) "does not itself

23

create a private right of action," *see* Reply at 6-7 (quoting *Solow v. Kalikow* (*In re Kalikow*), 602

F.3d 82, 97 (2d Cir. 2010)) (internal quotations removed), nor does Section 105(a) allow one

court to enforce an injunction issued by another court. *See id.* at 16-18. In short, according to

Citibank, contempt is Plaintiff's sole means to enforce alleged violations of the discharge

injunction and Section 524(a)(2) because the latter does not confer a private right of action and

thus requires dismissal of Plaintiff's DJA claim. *Id.* at 23-26.

The deciding question thus is whether Citibank is right that Plaintiff lacks any

enforceable right independent of the Court's contempt powers to justify invocation of the

Declaratory Judgment Act. The Court concludes Plaintiff has the better of the argument, because

Citibank's position understates the reach of the Declaratory Judgment Act and overstates the

notion that declaratory judgments are only available in conjunction with viable, complete,

freestanding causes of action.

First, it bears emphasis that Plaintiff explains that her new first cause of action "is no

longer seeking a determination that Citibank was in contempt of other bankruptcy judges'

discharge orders," but "is focusing solely on Citibank's violation of Section 524(a)" as a result of

Citibank's alleged uniform processes or policies. Plaintiff's Opp. at 16. Plaintiff's new cause of

action is crafted to avoid the strong objection that a court sitting in equity may not issue

declaratory relief predicated on interpreting or enforcing injunctions entered by other

courts. *See Bruce*, 75 F.4th at 303 n.6 (observing a lack of support for the proposition that "one

court may enforce another court's injunction."); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S.

388, 391 (2006) (A "major departure from the long tradition of equity practice should not be

lightly implied."); *Gravel v. Sensenich (In re Gravel)*, 6 F.4th 503, 513 (2d Cir. 2021) (A

"bankruptcy court has 'unique expertise in interpreting its own injunctions and determining when

24

they have been violated.'" (quoting *Anderson*, 884 F.3d at 390–91)); *Belton*, 961 F.3d at 617.

Thus, Plaintiff disavows reliance on any particular order, and instead alleges a policy and

consistent practice of Citibank to violate the terms of Section 524 itself. Plaintiff argues that the

authority to declare that conduct violates Section 524(a) is not confined to the court that issued

any particular discharge order.

Having studied this question closely, the Court concludes that this Court may exercise its

declaratory authority in conjunction with the DJA and Bankruptcy Code Section 105(a) to

address uniform conduct that systemically undermines the effectiveness of the bankruptcy

process. This conclusion finds support but does not entirely depend on the wording of Section

105 itself. *See* 11 U.S.C. § 105(a) ("[t]he court may issue any order, process, or judgment that is

necessary or appropriate to carry out the provisions of this title.").

Citibank is correct that a declaratory judgment action does not "provide an independent

cause of action" so that "a court may only enter a declaratory judgment in favor of a party who

has a substantive claim of right to such relief." *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d

726, 731 (2d Cir. 1993). Further, a declaration of rights is an equitable remedy, and the DJA does

not displace traditional equitable principles governing the availability of such relief. But Citibank

overstates the limitations on the reach of the Declaratory Judgment Act. According to the Second

Circuit and more flexibly than Citibank's position acknowledges, "[a] declaratory judgment

action presents an actual controversy if 'the facts alleged, under all the circumstances, show that

there is a substantial controversy, between parties having adverse legal interests, of sufficient

immediacy and reality to warrant the issuance of a declaratory judgment.'" *Dicola v. Am. S.S.*

*Owners Mut. Prot. & Indem. Ass'n (In re Prudential Lines Inc.)*, 158 F.3d 65, 70 (2d Cir.

1998) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). In that

circumstance, a declaratory judgment action is . . . a procedural device used to vindicate substantive rights." *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992). It provides "a new form of procedure for the adjudication of rights in conformity to those principles." *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 300 (1943).

This is true notwithstanding significant constraints on use of the DJA, under which bankruptcy courts are "not 'authorize[d] . . . to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity'" and do not have "equitable power . . . to further the purposes of the Code generally, or otherwise to do the right thing." *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86, 91–92 (2d Cir. 2003)). Further, a "declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Hosp. Ass'n of N.Y. State, Inc. v. Toia*, 577 F.2d 790, 798 (2d Cir. 1978) (internal quotations removed) (quoting *Eccles v. Peoples Bank*, 333 U.S. 426, 431 (1948)). As the Supreme Court and the Second Circuit have emphasized, when a statutory provision invokes equitable concepts, it "brings the old soil with it," including the longstanding limitations on how courts enforce injunctions. *Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019); *Bruce*, 75 F.4th at 303–05.

The parties have not supplied precedent from within the Second Circuit as to whether DJA relief is available as to statutory violations even where a separate and freestanding private cause of action does not exist, but authority from other Circuits supports the availability of such relief, even where alleged violations of Section 524(a) are at issue and even in the absence of a private right of action under Section 524. *See, e.g.*, *Ins. Co. N. Am. v. NGC Settlement Tr. & Claims Mgmt. Corp. (Matter of Nat'l Gypsum Co.)*, 118 F.3d 1056, 1063 (5th Cir. 1997)

(holding that discharge violations may be challenged not only through contempt, but also by way of a declaratory judgment action); *Crocker v. Navient Sols., LLC (In re Crocker)*, 941 F.3d 206, 210–11 (5th Cir. 2019) (recognizing that the discharge is a substantive right enforceable through contempt *or* declaratory relief) (emphasis added). Bankruptcy courts likewise have rejected the argument that the absence of an express private right of action under Section 524 limits jurisdiction under Section 105, *see Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 396 B.R. 436, 456–60 (Bankr. S.D. Tex. 2008), and have permitted declaratory and ancillary injunctive relief under Bankruptcy Rule 7001 notwithstanding the absence of a private right of action. *See, e.g.*, *Beveridge v. Wagabaza (In re Wagabaza)*, No. 5:18-CV-00406-JL, 2019 WL 3717794, at *7 (C.D. Cal. Aug. 7, 2019) (holding that the bankruptcy court did not err in granting the declaratory relief sought for an alleged violation of the Section 524(a)(2) discharge injunction); *Nash v. Clark Cnty. Dist. Att'y's Off. (In re Nash)*, 464 B.R. 874, 879 (9th Cir. BAP 2012) (considering the merits of the debtor's claim for declaratory relief in an adversary action and concluding that the relief sought was proper under Rule 7001(6) and (9)); *Teran v. Navient Sols., LLC (In re Teran)*, 649 B.R. 794, 803 (Bankr. N.D. Cal. 2023) (allowing plaintiff to "join his sanctions motion and his adversary proceeding to determine dischargeability," both in the form of a class action); *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 444 (1st Cir. 2000), *amended on denial of reh'g* (Dec. 15, 2000) (seeing "no reason to jump into the fray with the complex analysis required by *Cort v. Ash* when a remedy is readily and expressly available through another section of the Bankruptcy Code, namely, [Section] 105(a).").

Although topically somewhat far afield and in an area where expansive use of the DJA has been recognized to be beneficial, Second Circuit and other decisions in the trademark context make clear that the existence of a separate, complete, ripe cause of action is not required to

27

support a Declaratory Judgment Act claim. In cases where parties have sought to resolve

trademark disputes without the need of the non-trademark-holder to risk liability by violating a

trademark, the Second Circuit has held that while the statutory "phrase 'case of actual

controversy' in the [Declaratory Judgment] Act refers to the type of 'Cases' and 'Controversies'

that are justiciable under Article III," an

> action seeking declaratory relief satisfies the case-or-controversy requirement,
> and thus permits the exercise of federal jurisdiction, if the dispute is "definite and
> concrete, touching the legal relations of parties having adverse legal interests" and
> is "real and substantial," such that it "admit[s] of specific relief through a decree
> of a conclusive character, as distinguished from an opinion advising what the law
> would be upon a hypothetical state of facts."

*Saleh v. Sulka Trading Ltd.*, 957 F.3d 348, 353-54 (2d Cir. 2020) (internal citations omitted).

Further, despite changes in law that invalidated earlier precedent focusing on inquiry whether

"the defendant's conduct created a real and reasonable apprehension of liability on the part of the

plaintiff," a relevant and "valid" inquiry remains whether "the plaintiff engaged in a course of

conduct which has brought it into adversarial conflict with the defendant." *Id.* at 354. Thus, a

court need not insist on a ripe trademark violation cause of action based on an actual violation of

a trademark, but instead can proceed where "the plaintiff adequately allege[s] that he or she 'has

engaged in a course of conduct evidencing a definite intent and apparent ability to commence use

of the marks on the product.'" *Id.* (citations omitted).

This sort of flexible approach has long been recognized. In *Maryland Casualty, supra*,

the Supreme Court endorsed a totality of the circumstances test for determining whether a party

seeking relief under the Act has demonstrated that a justiciable "controversy" exists. *Md. Cas.*

*Co.*, 312 U.S. at 273. The Court in *Maryland Casualty* explained that "[b]asically, the question in

each case is whether the facts alleged, under all the circumstances, show that there is a

28

substantial controversy, between parties having adverse legal interests, of sufficient immediacy
and reality to warrant the issuance of a declaratory judgment." *Id.* In adopting this test, the
Supreme Court recognized that "[t]he difference between an abstract question and a
'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it
would be difficult, if it would be possible, to fashion a precise test for determining in every case
whether there is such a controversy." *Id.* The Second Circuit recited this language with approval
in *Nike v. Already, LLC*, 663 F.3d 89, 95 (2d Cir. 2011).

The Court sees no good reason why this sort of flexible approach would not be just as
beneficial and just as permissible here, where a debtor with modest means is seeking an effective
pathway to secure meaningful judicial review of an allegedly statute-violating and uniform
Citibank practice that allegedly impeded the effectiveness of many Chapter 7 debtors'
discharges. This case presents ample "immediacy," adversity, genuineness of conflict, and
concreteness. The availability of DJA review also avoids insulating Citibank's alleged conduct
from meaningful judicial review by consigning each individual debtor to the need to mount a
separate legal challenge that would almost surely be beyond the modest means of the typical
Chapter 7 debtor.

To emphasize, here there is a clear, non-hypothetical, litigable "controversy" presented:
what exactly was Citibank's policy or practice, and did that policy or practice violate section
524. There is nothing "abstract" about this question, which the present case squarely presents.
Plaintiff's proposed declaratory judgment claim and her contempt claim turn on the same
conduct, and diverge only as to two questions, first, whether the legal requirement that allegedly
was violated was the specific discharge order in Ms. Bruce's case or more broadly the
requirements of Section 524, and, second, the form of relief available. *See Anderson II*, 668 B.R.

at 785 ("Where the contempt and declaratory judgment claims differ is in the redressability of the violation.").

As to the first of these questions, even assuming without concluding that there is no recognized private cause of action other than contempt for violations of Section 524, Plaintiff's claim arising from Citibank's systemic conduct in violation of that provision meets all of the considerations set forth by the Circuit in *Saleh* – namely, a dispute affecting the Plaintiff that is "'definite and concrete, touching the legal relations of parties having adverse legal interests' and is 'real and substantial,' such that it 'admit[s] of specific relief.'" *Saleh*, 957 F.3d at 353-54. In other words, as Plaintiff argues, the absence of the lack of a private action *per se* in Section 524(a) "does not mean the bankruptcy court cannot declare a violation of that section." Plaintiff's Supp. Memo at 1. The Court agrees and concludes that no more is required – in addition to her contempt claim, Plaintiff is entitled to advance a substantive claim for a determination as to whether Citibank's systemic practices violated Section 524(a) and, thus, harmed her and other similarly situated people. *See Nat'l Union Fire Ins. Co.*, 108 F.3d at 21; *Golden*, 671 B.R. at 633. In *Belton*, where the Second Circuit stated that it "has never identified a private right of action under section 524," *Belton*, 961 F.3d at 616, it examined a cause of action premised on the violation of a court order and injunction, not a DJA claim for the alleged violation of Section 524(a)(2). *Id.* at 616–17. Plaintiff's first cause of action now explicitly invokes the DJA, and it asserts a "substantive claim of right to . . . relief." *Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d at 731. Thus, the DJA offers an additional remedy to Plaintiff even assuming Section 524 does not itself create a private cause of action. *See Nat'l Union Fire Ins. Co.*, 108 F.3d at 21.

Further, while this Decision assumes (but does not decide) that Section 524 does not create a private cause of action, see *Bessette*, 230 F.3d at 444, at least one recent decision suggests otherwise. *See Anderson III*, 673 B.R. at 554–58 (citing the four-part test in *Cort v. Ash*, 422 U.S. 66, 78 (1975), and concluding that a private right of action does exist for a violation of the Section 524(a)(2) discharge injunction). The existence of such a cause of action would be decisive in Plaintiff's favor.

Finally, and as briefly noted above, although Section 105(a) alone does not create a freestanding cause of action, the Court's holding is further buttressed by that provision's authorization for bankruptcy courts to issue any "order" or "judgment" that is "necessary or appropriate" to "carry out" other Bankruptcy Code "provisions" – not merely "orders." 11 U.S.C. § 105(a); *see also Kalikow*, 602 F.3d at 97 (a court's equitable powers are "in addition to whatever inherent contempt powers the court may have and must include the award of monetary *and other forms of relief* to the extent such awards are necessary and appropriate to carry out the provisions of the Bankruptcy Code and provide full remedial relief.") (emphasis added).

Citibank's motion to dismiss Plaintiff's first cause of action is therefore denied.

> 2.   <u>Plaintiff Can Proceed With Her First Cause of Action on a Class-wide Basis</u>

The Second Amended Complaint contends that class certification of all claims is appropriate under Fed. R. Civ. P. 23(b)(2) and Bankruptcy Rule 7023 because "Defendants have acted and/or refused to act on grounds generally applicable to the entire class, thereby making declaratory and final injunctive relief appropriate." SAC ¶ 89.

Citibank contends that the declarative, monetary, and resitutionary relief sought in Plaintiff's first cause of action "implicates all the same problems that the Second Circuit found

foreclosed a nationwide class seeking to recover under a contempt claim." Defendants' Memo at

27 (citing *Bruce*, 75 F.4th at 303–04 n.6). Specifically, Citibank asserts that in order to

adjudicate a class-wide claim for declaratory relief to determine whether Citibank is in violation

of Section 524(a), a bankruptcy court would need to interpret other courts' discharge injunctions

and determine whether they have been violated. *See id.* at 27-28. Citibank argues that because

the Second Circuit "has never identified a private right of action under section 524," *Belton*, 961

F.3d at 616, then Plaintiff can only proceed on an individual basis with her contempt claim.

Defendants' Memo at 25-26; *see also Garfield v. Ocwen Loan Servicing, LLC*, 811 F.3d 86, 91–

92 n.7 (2d Cir. 2016) ("[W]e do not decide whether the discharge injunction provision should be

construed implicitly to create a cause of action for its violation, in addition to a contempt

remedy."). Since the Second Circuit rejected Plaintiff's attempt to create a nation-wide class for

a contempt claim, it follows, according to Citibank, that allegations of a national class on

Plaintiff's new, separate declaratory judgment claim fail as well because the DJA only creates a

procedural mechanism to adjudicate a claim and is not in itself an independent cause of action.

*See* Defendants' Memo at 28-29.

Plaintiff responds that because Plaintiff's proposed class is limited to individuals who

received a discharge and Plaintiff seeks only a declaration that Citibank's generally applied

policies and practices constitute an unlawful attempt to collect discharged debts, a merits or

liability question exists that requires no individualized interpretation or enforcement of other

courts' discharge orders. *See* Plaintiff's Opp. at 13-17.

Plaintiff has the better reading of Supreme Court and Second Circuit authority.

Consistent with the conclusion of this decision's prior section, neither *Taggart*'s "old soil"

analysis nor *Bruce* forecloses declaratory relief as a means of adjudicating statutory violations on

a class-wide basis where liability questions are common and relief can be appropriately

bifurcated if necessary. *See Bruce*, 75 F.4th at 304 n.6, 306 n.9 (leaving the issue of whether

Plaintiff and the proposed class are entitled to declaratory relief and damages "for another day.").

Contrary to Citibank's arguments, there is no need for the Court to interpret the injunction orders

issued by other courts in order to determine whether Citibank systemically violated Section

524(a), and this issue is well suited to be resolved on a class-wide basis.

Indeed, courts in the Second Circuit have consistently permitted class actions seeking

declaratory judgments that uniform conduct violated federal statutes. *See, e.g.*, *Anderson II*, 668

B.R. at 785-86 (holding that "a claim seeking declaratory judgment for a violation of the

Bankruptcy Code, and specifically in this case Section 524, would not be futile"); *Golden v.*

*Nat'l Collegiate Student Loan Trust 2006-4 (NCT-2006) (In re Golden)*, 671 B.R. 544, 637

(Bankr. E.D.N.Y. 2025) (concluding that plaintiff may proceed with declaratory judgment claim

on behalf of a putative nationwide class for a violation of Section 523); *Gulino v. Bd. of Educ. of*

*City Sch. Dist. of City of N.Y.*, 907 F. Supp. 2d 492, 506–07 (S.D.N.Y. 2012) (The "resolution of

[a declaratory relief] claim will not involve individual determinations, but rather involves a claim

common to the class, the resolution of which will streamline later proceedings for damages and

other individual relief.") (citing *United States v. City of N.Y.*, 276 F.R.D. 22, 34–35 (E.D.N.Y.

2011)); *Clark v. Astrue*, 274 F.R.D. 462, 472–73 (S.D.N.Y. 2011) (discussing a typicality of

class's claims, which "arise[ ] from the same course of events" and rely on "similar legal

arguments to prove the defendant's liability") (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376

(2d Cir. 1997) (internal quotations removed)); *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D.

221, 236, 244 (S.D.N.Y. 2010) (describing conduct that shows a defendant "act[ed] on grounds

that apply generally to the class" under Fed. R. Civ. P. 23(b)(2)).

Nor does the difference between the proposed remedy of declaratory and associated ancillary relief and the remedy of contempt sanctions render Plaintiff's pursuit of class-wide relief invalid. Courts have recognized that declaratory relief is available on a class basis to collectively address common questions of liability even where damages or redress questions require individualized consideration, thus permitting the court to adjudicate uniform conduct without resolving damages or sanctions at the same time. *See Gulino v. Bd. of Educ.*, 907 F. Supp. 2d 492, 506 (S.D.N.Y. 2012) (citing Advisory Committee Note to Fed. R. Civ. P. 23(c)(4) ("[T]he action may retain its 'class' character only through the adjudication of liability to the class; the members of the class may thereafter be required to come in individually and prove the amounts of their respective claims.")); *Chen-Oster v. Goldman, Sachs & Co.*, No. 10 CIV. 6950 LBS JCF, 2012 WL 205875, at *7 (S.D.N.Y. Jan. 19, 2012), *aff'd in part, rev'd in part*, 877 F. Supp. 2d 113 (S.D.N.Y. 2012) ("Disparate impact and pattern-or-practice disparate treatment cases are especially appropriate for bifurcation precisely because, as *Teamsters* noted, individual issues arise 'only if the class established the employer's liability.'") (quoting *City of N.Y.*, 276 F.R.D. at 34).

This is exactly what Plaintiff and her counsel pursue here: a workable way of seeking redress for Citibank's alleged blanket practice of maximizing revenues to debtors' detriment by declining to inform credit rating agencies of discharges of debts owed on Citibank-issued cards. Effective relief is unlikely to be achieved if Citibank successfully eludes Plaintiff's efforts to pursue class-wide relief. And nothing in the Second Circuit's *Bruce* decision forecloses Plaintiff's approach; *Bruce* explicitly did not decide whether class relief not grounded in contempt could be available, observing instead that "whether and to what extent relief short of contempt sanctions is available" presents a separate inquiry. *Bruce*, 75 F.4th at 306 n.9. Another

judge of this Court has reached the same conclusion and authorized the pursuit of class-wide relief in a virtually identical action. *See Anderson II*, 668 B.R. at 785.

Accordingly, and because the Court has already concluded that bifurcation of liability and remedy is permissible, the Court, applying *Taggart*'s "old soil" analysis in combination with Section 105(a), concludes that Plaintiff may proceed on her own behalf as well as with a class-wide claim seeking a declaratory judgment that Defendant's uniform conduct violated Section 524(a)(2). *See Anderson II*, 668 B.R. at 785–86 (citing cases); *Taggart*, 587 U.S. at 560. The resolution of Plaintiff's first cause of action for declaratory, monetary, and monetary relief on a class-wide basis, if successful, "will streamline later proceedings for damages and other individual relief." *Gulino*, 907 F. Supp. 2d at 506; *cf.* 4 Collier on Bankruptcy ¶ 524.02[2][c] ("Of course, courts *can* find that the discharge injunction was violated without finding a party in contempt and subject to sanctions.") (emphasis added).

As a coda, the Court is not persuaded by Citibank's argument that the facts of this case do not support the proposed class-wide declaratory judgment claim. Citibank observes that Plaintiff alleges she asked Citibank to correct her credit report, and Citibank refused. *See* Defendants' Memo at 8-9; SAC ¶¶ 9, 25-27. Her proposed class claim seemingly extends to individuals who did not reach out to Citibank after they obtained a discharge. But the significance if any of this possible factual difference can be resolved later in this litigation and does not warrant outright dismissal or a striking of class claims now. *See Chen-Oster*, 877 F. Supp. 2d at 117.

### C.  The Court Strikes the District-Wide Relief Sought in Plaintiff's Second Cause of Action for Contempt

Lastly, Citibank argues that the reasoning behind Second Circuit's holding in *Bruce* that forecloses a nationwide class for Plaintiff's contempt claim, see *Bruce*, 75 F.4th at 299, likewise

requires striking Plaintiff's contempt claim in her amended second cause of action, which now proposes certifying a class limited to individuals who received a discharge in the Southern District of New York rather than a nationwide class. Defendants' Memo at 29 (citing SAC ¶ 84). Specifically, Citibank contends that certifying even a smaller, district-wide class would still require a bankruptcy judge to interpret and enforce another judge's order and therefore improperly usurp that judge's authority. *See id.* at 29-32. Plaintiff disagrees, stating that the Second Circuit did not squarely address the issue of certification of a district-wide contempt claim class and that it is logical and proper for a bankruptcy judge to be able to interpret and enforce the orders of their fellow judges in the same district. Plaintiff's Opp. at 22-23.

On this question, the Court agrees with Citibank that the Second Circuit's reasoning for rejecting a nationwide contempt class applies with equal force to a district-wide class. While it is true the Second Circuit did not expressly decide the permissibility of a district-wide contempt class, *Bruce* explained that a bankruptcy court's authority to enforce the discharge injunction through contempt is "coextensive with—not greater than—the civil contempt authority wielded by courts outside of bankruptcy," and is bounded by "traditional standards in equity practice." *Bruce*, 75 F.4th at 303. *Bruce* further observed that the civil contempt power is "uniquely personal to each court," such that the "offended judge" alone is responsible for identifying, adjudicating, and sanctioning contumacious conduct. *Id.* at 303–04 (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) (internal quotations removed)).

Even re-pled as limited to a district-wide class, Plaintiff's theory would require a single judge to interpret and enforce discharge injunctions entered by multiple other judges, an approach the Second Circuit has termed as an "anomalous proceeding" that would improperly intrude on another court's authority. *Bruce*, 75 F.4th at 304 (quoting *Ex parte Bradley*, 74 U.S.

364, 372 (1868)) (internal quotations removed); *see also Anderson I*, 884 F.3d at at 390.

Permitting class-wide contempt relief would displace each issuing court's unique role in

interpreting its own orders and determining whether they have been violated, a result the Second

Circuit has warned would "wreak havoc." *Bruce*, 75 F.4th at 304–05 (citing *Taggart*, 587 U.S. at

562); *Anderson I*, 884 F.3d at 390–91; *see also Cox v. Zale Del., Inc.*, 239 F.3d 910, 916 (7th

Cir. 2001) ("The [contempt] remedy authorized by section 524(a)(2) has the advantage of

placing responsibility for enforcing the discharge order in the court that issued it."). And the

mere fact that circumstances sometimes require one judge to enforce an order entered by a

predecessor or colleague does not make Plaintiff's request less anomalous or inappropriate where

circumstances do not make the issuing judge unavailable or unable to personally enforce the

order. *See Bruce*, 75 F.4th at 305–06; *Anderson I*, 884 F.3d 382, 390–91; *Kalikow*, 602 F.3d at

96; Fed. R. Civ. P. 63 (powers of successor judge); Fed. R. Civ. P. 63 (powers of successor

judge); Fed. R. Bankr. P. 9028 (incorporating Rule 63).

In rejecting arguments identical to Plaintiff's here, Judge Mastando has explained why

Plaintiff's cited cases, *United States v. Corn*, 836 F.2d 889, 892 (5th Cir. 1988) and *Beiter v.

Chase Home Finance, LLC (In re Beiter)*, 554 B.R. 433, 439 (Bankr. S.D. Ohio 2016), are

inapplicable here. The Court adopts and need not restate or go beyond that well-reasoned

analysis. *See Anderson II*, 668 B.R. at 786–87.

In sum, in the case of enforcement of prior orders, a bankruptcy court's "familiarity with

the matter remains important," *Bruce*, 75 F.4th at 305, and the class relief that Plaintiff proposes

would cause this Court to improperly usurp the proper role and authority of other bankruptcy

judges to interpret and enforce their own orders.

Therefore, Citibank's motion to strike the class allegations in the second cause of action in Plaintiff's Second Amended Complaint is granted. Plaintiff may proceed with her contempt claim on an individual basis.

## VII.    **CONCLUSION**

For the foregoing reasons, the Court hereby denies Citibank's Motion to for an order compelling arbitration of Plaintiff's first cause of action on an individual basis, or, in the alternative, dismissing the first cause of action, or, in the further alternative, dismissing or striking its class allegations with respect to the first cause of action. The Court hereby grants Citibank's Motion to strike the second cause of action's revised class allegations.

The parties are to jointly submit a proposed order memorializing and implementing this decision's rulings. The parties also are to promptly meet and confer regarding next steps in the litigation, and then contact chambers to schedule a case management conference, which should occur within 30 days of entry of this decision. As part of their discussion, the parties should discuss whether any party wishes to appeal this ruling, and, if so, any further procedural steps that may be necessary and appropriate.


IT IS SO ORDERED.


Dated: New York, New York
      January 26, 2026

                                      *s/ David S. Jones*
                                    Honorable David S. Jones
                                    United States Bankruptcy Judge